STATE HIGHWAY COMMISSION v BILTMORE INVESTMENT
COMPANY, INC

Docket No. 85588. Submitted June 9, 1986, at Detroit. Decided December 16, 1986.

In 1977, the Michigan State Highway Commission filed in Macomb Circuit Court a petition for the condemnation of property belonging to Biltmore Investment Company, Inc., for highway purposes. Plaintiff initially had offered $190,000 for the property. The parties subsequently entered into a consent judgment under which plaintiff agreed to pay $250,000 for the property, plus statutory interest. The issue of attorney fees was left undecided. Defendant subsequently filed a motion for allowance of $34,426.10 in attorney fees under the Uniform Condemnation Procedures Act, which became effective during the course of the condemnation proceedings. Plaintiff responded that attorney fees should be granted pursuant to the statute in effect when the proceedings began, which would limit attorney fees to a maximum of $100. The court, Lawrence P. Zatkoff, J., ruled that attorney fees would be awarded pursuant to the predecessor statute. Approximately six months later, a final order denying attorney fees was entered. Defendant appealed.

The Court of Appeals *held*:

The attorney fees in this case should be awarded pursuant to the Uniform Condemnation Procedures Act, which became effective during the course of the proceedings. The clear and apparent purpose of the act was to create a single condemnation act which would replace all other condemnation statute procedures on April 2, 1980. In Michigan, statutes affecting only a procedural or remedial right, as in this case, generally are held retroactive since there is no right to keep procedural law unchanged and free from amendment. The trial court's order establishing attorney fees and final order denying defendant's motion for reimbursement of attorney fees are reversed and the matter is remanded to the trial court for determination

REFERENCES

Am Jur 2d, Eminent Domain §§ 473, 476.

Attorney's fees as within statute imposing upon condemnor liability for "expenses," "costs," and the like. 26 ALR2d 1295.

of reasonable attorney fees within the limits set forth in the Uniform Condemnation Procedures Act.

Reversed and remanded.

Eminent Domain — Condemnation Proceedings — Attorney Fees — Uniform Condemnation Procedures Act.

The attorney fee provisions of the Uniform Condemnation Procedures Act apply to condemnation proceedings begun before the effective date of the act but concluded after the act was in effect and the predecessor statute had been repealed (MCL 213.51 *et seq.*; MSA 8.265[1] *et seq.*).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Ronald F. Rose* and *C. Robert Wartell,* Assistant Attorneys General, for plaintiff.

*Bert Burgoyne, P.C.* and *Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *Bert Burgoyne*), for defendant.

Before: Allen, P.J., and Wahls and M. Warshawsky,* JJ.

Allen, P.J. Where condemnation proceedings were commenced in 1977 under the predecessor statute, 1966 PA 295; MCL 213.361 *et seq.*; MSA 8.261(1) *et seq.*, which limited attorney fees to $100, but were concluded and judgment entered in 1984 under the successor statute, 1980 PA 87, the Uniform Condemnation Procedures Act, MCL 213.51 *et seq.*; MSA 8.265(1) *et seq.*, under which attorney fees up to $34,000 would be allowable, which statute applies to the instant suit? On January 15, 1985, the Macomb Circuit Court issued an opinion and order awarding attorney fees under the predecessor statute. Defendant property owner appeals as of right. The issue is of first impression.

On May 13, 1977, the plaintiff, the Michigan

---

* Circuit judge, sitting on the Court of Appeals by assignment.

State Highway Commission, filed in Macomb Circuit Court a petition for the condemnation of private property in the City of Sterling Heights for highway purposes. The plaintiff initially offered the defendant, Biltmore Investment Company, Inc., $190,000 for the property. On June 8, 1984, the parties entered into a consent judgment under which plaintiff agreed to pay the defendant $250,000, plus statutory interest, for the real property which the plaintiff had condemned for highway purposes. The consent judgment left undecided the issue of attorney fees, appraisal fees and other costs.

On November 2, 1984, the defendant filed a motion for allowance of $34,426.10 in attorney fees under the Uniform Condemnation Procedures Act, 1980 PA 87, which became effective during the course of the condemnation proceedings. Plaintiff responded that attorney fees should be granted pursuant to 1966 PA 295, the statute in effect when condemnation proceedings were first initiated. Under that statute, the defendant would be entitled to, at most, $100 in attorney fees. On January 15, 1985, the trial judge issued an opinion and order which stated that attorney fees would be awarded pursuant to the predecessor statute. In so doing the court relied heavily on the following language of this Court in *City of Grand Rapids v H R Terryberry Co,* 122 Mich App 750; 333 NW2d 123 (1983):

> The act is silent as to its applicability to actions commenced, as was the one in the instant case, prior to May 1, 1980, pursuant to 1966 PA 295. Given the specificity of the language in MCL 213.75; MSA 8.265(25) concerning those actions to which it is applicable, *we do not believe the Legislature intended that actions not "commenced pursuant" to the act be governed, in whole or in part*

*by provisions thereof.* [122 Mich App 758. Emphasis supplied.]

On June 4, 1985, a final order denying attorney fees was entered. The defendant appeals.

In 1980, while trial was pending under Act 295 in the circuit court, the Legislature enacted the Uniform Condemnation Procedures Act, 1980 PA 87, described in the preamble of the act as:

> AN ACT to provide procedures for the condemnation, acquisition, or exercise of eminent domain of real or personal property by public agencies or private agencies; to provide for damages; to prescribe remedies; and to repeal certain acts and parts of acts.

The UCPA is strictly a Michigan enactment. It is "uniform" only in that it provides uniform procedures for all State of Michigan agencies which possess condemnation powers. The UCPA allows the trial court to award reasonable attorney fees to a party who receives a judgment greater than the written offer, but not to exceed one-third of the difference between the written offer and the judgment. MCL 213.66; MSA 8.265(16). In the instant case, under the UCPA, the defendant could receive reasonable attorney fees up to about $34,000.

For purposes of decision in the instant case, the applicable provisions of the UCPA (hereinafter referred to as Act 87) are § 25 and § 26. Section 25 reads:

> (1) Except as otherwise provided by subsections (2), (3), . . . effective May 1, 1980, all actions for the acquisition of property by an agency under the power of eminent domain shall be commenced pursuant to *and be governed by this act.*
> (2) *Actions for the acquisition of property under*

Act No. 149 of the Public Acts of 1911, as amended, being sections 213.21 to 213.41 of the Michigan Compiled Laws, Act No. 238 of the Public Acts of 1923, as amended, being sections 486.251 to 486.254 of the Michigan Compiled Laws, and Act No. 295 of the Public Acts of 1966, as amended, being *sections 213.361 to 213.391 of the Michigan Compiled Laws, may be commenced pursuant to and be governed by this act, effective May 1, 1980.*

(3) *All actions for the acquisition of property by an agency under* Act No. 149 of the Public Acts of 1911, as amended, being sections 213.21 to 213.41 of the Michigan Compiled Laws, and Act No. 295 of the Public Acts of 1966, as amended, being sections *213.361 to 213.391 of the Michigan Compiled Laws, shall be commenced pursuant to and be governed by this act, effective April 1, 1983.*

Section 26 repeals, effective April 1, 1983, the procedural sections of Act 295 under which plaintiff commenced this action.

We begin our analysis by stating what we perceive to be the meaning of the above statutory provisions. Section 25(1) provides that effective May 1, 1980, all condemnation actions "shall be commenced pursuant to and be governed by" Act 87, unless otherwise provided in subsections 25(2), (3), and (4). Subsection (2) creates a transition period from May 1, 1980, until April 1, 1983, during which condemnation actions brought under former Act 295 "*may* be commenced pursuant to and be governed by" Act 87. Subsection (3) mandates that commencing April 1, 1983, all actions under Act 295 "*shall* be commenced pursuant to and be governed by" Act 87. Subsection (4) by agreement of the parties is inapplicable to the instant case. Totally absent is any statutory language directly referring to Act 295 suits commenced prior to April 1, 1980. It is the absence of

such language that occasions the dispute in the instant case.

The Attorney General, representing the plaintiff, argues that Act 87 governs and applies only to actions filed after April 1, 1983. According to the Attorney General, the twice repeated language in subsections (2) and (3) "[may/shall] be commenced pursuant to and be governed by this act" means that for Act 87 to have application, a proceeding must have been commenced under Act 87. In essence, plaintiff reads the subsections (2) and (3) language ". . . all actions for the acquisition of property . . . [may/shall] be commenced pursuant to and be governed by this act" as though they read ". . . all actions for the acquisition of property *which were commenced pursuant to this act* may/shall be governed by this act." The above underscored words are added under the construction given by plaintiff. We disagree on two grounds.

First, words are read into the statute which are not there. The statute does not make exceptions for cases filed prior to May 1, 1980. Under plaintiff's construction of the statute "*all* actions for the acquisition of property" becomes something less than "*all.*" This is contrary to the plain words of the statute. Second, plaintiff's interpretation would allow attorney fees according to provisions which were repealed one year and nine months earlier. As noted, § 26 of Act 87 repealed the procedural sections of Act 295 which limited attorney fees to $100. We are unable to understand how in January, 1985, attorney fees can be awarded pursuant to statutory provisions repealed effective April 1, 1983. In this connection, we particularly note that the attorney fees awarded under Act 295 rather than Act 87 in *Terryberry, supra,* were awarded prior to April 1, 1983, and, unlike the instant case,

while the procedural provisions of Act 295 were still in effect.

We well understand how attorney fees in a suit started under Act 295 can be awarded according to Act 295 while during the grace or transition period that act was still in effect, but may not be so awarded when the grace period has expired and Act 295 is repealed. Accordingly, we do not find *Terryberry* dispositive in the instant case. We agree with defendant that the Court of Appeals in *Terryberry* reached the right result, though for the wrong reason, because the circuit court judgment in *Terryberry* was entered during the grace period. To the extent that *Terryberry* implies that actions not commenced under Act 87 may not under any circumstances be governed by Act 87, we disagree with *Terryberry.*

Similarly, we are not persuaded by defendant's vigorous and extended argument that because:

> Section 25 deals not only with new filings—when actions may or must "be commenced pursuant to" the UCPA—but also further proceedings—when actions are "governed by" the UCPA. [T]he only function § 25(3) . . . fulfills is to convert pending cases to the UCPA on April 1, 1983.

The flaw in this argument is the failure to give meaning to the word "and." Defendant construes the language in the disjunctive. That is not what the statute says.

Because we are unable to conclude that the language of the statute itself addresses the applicability of the statute to actions commenced pursuant to former statutes, including Act 295, we seek guidance from other sources. Read literally, Act 87 is silent on the issue posed in this case. The first postulate of statutory construction is to discover

and give effect to the intent of the Legislature. *Moore v Dep't of Military Affairs,* 398 Mich 324; 247 NW2d 801 (1976). Statutes must be read so as to facilitate the intent of the Legislature. *People v Clark,* 21 Mich App 712; 176 NW2d 427 (1970). The court has the duty, where the language of the statute is unclear or ambiguous, to construe the statute so as to effectuate the evident purpose of the legislation. *Franks v White Pine Copper Div, Copper Range Co,* 122 Mich App 177; 332 NW2d 447 (1982).

Fortunately, the legislative intent to the instant case is clearly described in the House Legislative Analysis of HB 4652, June 19, 1980, that being the bill which, upon passage and enrollment, became Act 87. The House Legislative Analysis states the purpose of the bill, its basic content and effective dates, and arguments pro and con as to attorney fees, as follows:

THE APPARENT PROBLEM:

Michigan has a number of condemnation statutes which authorize various public agencies and private agencies such as power companies, phone companies, and railroads, to acquire private property for public use. *The procedures in these statutes are not uniform. The bill would create a single condemnation procedures act for use by both public and private agencies in acquiring property under the power of eminent domain. It would replace all other condemnation statute procedures on April 2, 1980.*

\* \* \*

THE CONTENT OF THE BILL:

The bill would *create a single condemnation procedures act* for use by both public and private agencies in acquiring property under the power of eminent domain where the agency has been granted that power by another statute.

\* \* \*

Repealers and Effective Dates

The bill would repeal numerous sections of the statutes dealing with condemnation procedures and would make their repeal effective April 1, 1983. MCLA 486.252a to 486.252j, which govern the authority of water and power companies, would not be repealed until April 1, 1985. The effective date of House Bill 4652 would be April 1, 1980.

\* \* \*

Against:

The payment of a property owner's attorney fees by the agency when the agency has underestimated just compensation, and the general expansion of compensable items, will heavily burden the agencies. The bill is too unspecific as to just what guidelines are to be used in determining the amount of reimbursement.

Response:

The bill specifies that reimbursement will be for "reasonable" attorney fees. In the case of a trial showing that an agency had underestimated just compensation the reimbursement cannot be more than ⅓ of the amount of the difference between the jury's award and the agency's estimate. These are sensible limitations. In any case, an owner is only reimbursed for expenses which he or she had to bear as result of agency actions. To deny an owner a reasonable reimbursement would mean that the owner would surely suffer some loss as a result of an acquisition. It should be borne in mind that an owner is not reimbursed for attorney fees when he or she unsuccessfully challenges public necessity or an estimate of just compensation. [Emphasis supplied.]

Based upon the clear and apparent purpose of HB 4652 to create a single condemnation act which *"would replace all other condemnation statute procedures on April 2, 1980"*, we hold that attorney fees in the instant case should be

awarded pursuant to Act 87 rather than Act 295. To hold otherwise defeats the stated purpose of the act, viz.: to replace all other condemnation procedures as of April 2, 1980. Under plaintiff's interpretation and the judgment of the trial court, the former attorney award provision was not replaced April 2, 1980. When read as a whole and viewed in connection with the problem which the Legislature intended to correct, it is clear to us that the Legislature intended a single condemnation procedure which would replace the several former and often confusing procedures; that to orderly phase in the transition a three-year grace period was provided; that at the end of that grace period *all* procedures, including attorney fee provisions, would be governed by the new act. Given this manifest intent, it is impossible for us to rule that, after Act 295 was repealed and Act 87 became the only relevant statute pertaining to awardable attorney fees, attorney fees could still be limited as provided in Act 295.

Our conclusion in this regard is further reinforced by the House Bill Analysis statement that Act 87 was a procedural act. Under Michigan law statutes affecting only a procedural or remedial right generally are held retroactive since there is no right to keep procedural law unchanged and free from amendment. *Ballog v Knight Newspapers, Inc,* 381 Mich 527, 533-534; 164 NW2d 19 (1969); *Norwin v Ford Motor Co,* 132 Mich App 790, 794; 348 NW2d 703 (1984); *Forsythe v Valley Consol Ind,* 139 Mich App 211, 216; 361 NW2d 768 (1984). Further, other jurisdictions have applied changes in attorney fee statutes to pending eminent domain cases. *Chicago & Western Indiana R Co v Guthrie,* 192 Ill 579; 61 NE 658 (1901); *City of Wichita v Chapman,* 214 Kan 575; 521 P2d 589 (1974). In *Chapman,* the court said:

The statute merely changes the remedy or law of procedure. There being no saving clause in the statute, the right of the landowners to recover attorneys' fees as part of the costs, where the condemner [sic] appeals and the jury renders a verdict for the landowners in an amount greater than the appraisers' award, may be enforced under the new statute even though the action was pending . . . . [*Chapman,* p 585.]

While no Michigan case has addressed the question of changes in attorney fee statutes being applied to suits commenced under the former statutory provisions, the concept is established in Michigan Court Rules. MCR 1.102 states that the new court rules were to take effect March 1, 1985, *and were to govern pending actions.* The new court rules contain attorney fee sanctions which were not contained in the 1963 court rules. Compare, e.g., MCR 2.114(E) and GCR 1963, 114; MCR 2.313(D)(2) and GCR 1963, 313.4; and MCR 7.216(C)(2). In the case before us, while Act 87 did not state the new rules were to govern pending actions, neither did it state they were not applicable. Given the clear legislative intent that the new procedures "replace all other condemnation statute procedures," we do not hesitate to apply the changes in attorney fee provisions of Act 87 to the suit commenced under Act 295.

For the foregoing reasons, the trial court's order of June 15, 1985, establishing attorney fees and final order of June 4, 1985, denying defendant's motion for reimbursement of attorney fees are reversed and the matter is remanded to the trial court for determination of reasonable attorney fees within the limits set forth in § 16 of Act 87.

Reversed and remanded. No costs, a question of public interest being involved.